SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
BRUCE WECKER (CA Bar No. 078530)
bwecker@hosielaw.com
GEORGE F. BISHOP (CA Bar No. 89205)
gbishop@hosielaw.com
HOSIE McARTHUR LLP
One Market, 22nd Floor
San Francisco, CA 94105
(415) 247-6000 Tel.
(415) 247-6001 Fax

ROBERT J. YORIO (CA Bar No. 93178)
yorio@carrferrrell.com
CARR & FERRELL LLP
2200 Geng Road
Palo Alto, CA  94303
(650) 812-3400 Tel.
(650) 812-3444 Fax

Attorneys for Plaintiff
PRIVASYS, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| PRIVASYS, INC.,<br><br>                   Plaintiff,<br><br>           v.<br><br>VISA INTERNATIONAL SERVICE ASSOCIATION, VISA U.S.A.<br><br>                   Defendant | Case No. C 07-03257 SI<br><br>**PLAINTIFF PRIVASYS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Hearing Date:  November 16, 2007<br>Hearing Time:  9:00 a.m.<br>The Honorable Susan Illston<br>Courtroom 10, 19th Floor |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................................................1

II.  RELEVANT FACTS ..........................................................................................................3

III. VISA'S FUTILITY ARGUMENT IS WRONG FOUR WAYS. ............................6

    A.   The Complaint Alleges Otherwise.................................................................6

    B.   Visa Need Not Itself Practice Every Step Itself, As Long As
        It Controls Others Who Do ..............................................................................6

    C.   As The Scheme Operator, Visa Absolutely Controls Every
        Step Of The payWave Process.........................................................................7

    D.   Visa Misreads The Claims Of The '154 Patent ............................................9

IV.  VISA'S STAY MOTION SHOULD BE REJECTED ............................................11

V.   CONCLUSION..................................................................................................................14

**TABLE OF AUTHORITIES**

Cases                                                                                                                                 Page

*Alloc, Inc. v. Unilin Décor N.V.*,
    No. 02-C-1266, 2005 U.S. Dist. LEXIS 38066 at *10
    (E.D. Wisc. Dec. 15, 2005)..................................................................................................10

*Applied Interact, LLC v. The Vermont Teddy Bear Co., Inc.*,
    No. 04 Civ. 8713, 2005 U.S. Dist. LEXIS 19070 (S.D.N.Y. Sept. 6, 2005) ...........7

*A.P.T., Inc. v. Quad Environmental Tech. Corp., Inc.*,
    698 F.Supp. 718 (N.D. Ill. 1988)........................................................................11

*Beck Systems, Inc. v. Marimba, Inc., et al.*,
    No. 01 C 5207, 2001 U.S. Dist. LEXIS 19023 (N.D. Ill. Nov. 19, 2001).............10

*Bell Atlantic Corp. v. Twombly*,
    75 U.S.L.W. 4337, 127 S. Ct. 1955 (2007) ..............................................................2

*BMC Resources, Inc. v. Paymentech*,
    498 F.3d 1373 (Fed. Cir. Sept. 20, 2007) ...........................................................1, 6

*Cordis Corp. v. Medtronic Ave, Inc.*,
    194 F.Supp. 2d, 323 (D. Del. 2002)
    *rev'd on other grounds by* 339 F.3d 1352 (Fed. Cir. 2003)...................................7

*Faroudja Labs., Inc. v. Dwin Elecs., Inc.*,
    No. 97-20010-SW, 1999 U.S. Dist. LEXIS 22987 at *15
    (N.D. Cal. Feb. 24, 1999)....................................................................................7

*Hill v. Amazon.com*,
    No. 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389 (E.D.Tex. Jan. 19, 2006)..............7

*In re Laughlin Products, Inc., Patent Lit.*,
    265 F. Supp. 2d 525 (E.D. Pa. 2003) .............................................................10, 11

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)................................................................10, 11, 12

*Lifelink Pharmaceuticals, Inc. v. NDA Consulting, Inc.*,
    No. 5:07-CV-785, 2007 U.S. Dist. LEXIS 62674
    (N.D. Ohio Aug. 24, 2007) .......................................................................10, 11, 14

*Marley Mouldings Ltd. v. Mikron Indus., Inc.*,
    No. 02 C 2855, 2003 U.S. Dist. LEXIS 7211 (N.D. Ill. Apr. 30, 2003)..................7

REPLY IN SUPPORT OF MOTION FOR LEAVE          ii          CASE NO. C 07-03257 SI
TO FILE AMENDED COMPLAINT

*McZeal v. Sprint Nextel Corp.*,
    No. 2006-1548, 2007 U.S. App. LEXIS 22025 (Fed. Cir. Sept. 14, 2007) .........1, 2

*Mitsubishi Elec. Corp. v. IMS Tech., Inc.*,
    No. 96 C 0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996) .............13

*National Bankcard Corp v. Visa U.S.A., Inc.*,
    596 F.Supp. 1231 (S.D. Fla. 1984)
    *aff'd*, *National Bankcard Corp.*, 779 F.2d 592 ........................................................5

*National Bankcard Corp v. Visa U.S.A., Inc.*,
    779 F.2d 592 (11th Cir. 1986) ..................................................................................5

*Naxon Telesign Corp. v. GTE Information Systems, Inc.*,
    89 F.R.D. 333 (N.D. Ill. 1980) ..........................................................................10, 12

*Phonometerics, Inc. v. Hospitality Franchise Systems, Inc*,
    203 F.3d 790 (Fed. Cir. 2000) ..................................................................................2

*Refac Int'l v. IBM*,
    790 F.2d 79 (Fed. Cir. 1986) ..................................................................................10

*Rates Technology, Inc. v. New York Telephone Co.*,
    94 Civ. 9297 (DC), 1995 U.S. Dist. LEXIS 10254
    (S.D.N.Y. July 23, 1995) ................................................................................10, 11

*Shields v. Haliburton*,
    493 F. Supp. 1376 (W.D. La. 1980)
    *aff'd*, 667 F.2d 1232 (5th Cir. 1982) ........................................................................7

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ................................................................................................10

*Visa U.S.A. Inc. v. First Data Resources, Inc.*,
    No. C 02-01786 JSW, 2005 U.S. Dist. LEXIS 34281 at *4
    (N.D. Cal. Aug. 15, 2005) ........................................................................................5

*Williams Gold Refining Co. Inc. v. Semi-Alloys* Inc.,
    No. civ. 75-300, 1978 U.S. Dist LEXIS 19777 (W.D.N.Y. Feb. 2, 1978) ............11

## I. INTRODUCTION

Visa's opposition ignores the pleading standard in patent cases, overlooks the facts and claims PrivaSys actually alleged, improperly injects factual issues into this motion, and then gets those facts wrong. Visa's futility argument is an ill-founded summary judgment motion masquerading as an opposition to a motion for leave to amend. Its request to stay the claims against Chase and Wells Fargo is equally misconceived.

The amended complaint ("AC") alleges that Visa, Chase and Wells infringe directly. AC ¶39. It also alleges that Chase and Wells infringe *indirectly*, by inducing "others to make, use, and/or sell" payWave devices that when used as designed infringe PrivaSys' patented methods. *Id.* ¶40.

In allegations that Visa ignores, PrivaSys alleges that Visa, as the scheme operator, issues rules and standards governing its products, including payWave. *Id*. ¶¶3, 26, 32, 36. Visa member banks such as Chase and Wells are "required to conform to Visa's rules and specifications when issuing payWave cards." *Id*. ¶26. And, in fact, the Chase and Wells payWave products "conform to Visa payWave specifications and incorporate the payWave and technology," all as per Visa's product specifications and operating regulations. *Id.* ¶¶32, 36. Visa also ignores the holding of the very case it relies upon, *BMC Resources, Inc. v. Paymentech*, 498 F.3d 1373 (Fed. Cir. Sept. 20, 2007), that direct infringement exists for a party who either practices each step of a patent claim or directs or controls other entities who practice the remaining steps. This—as the evidence will ultimately show—is precisely the case here.

Six weeks ago, the Federal Circuit reviewed the pleading standard for a patent infringement claim. In *McZeal v. Sprint Nextel Corp.*, No. 2006-1548, 2007 U.S. App. LEXIS 22025 (Fed. Cir. Sept. 14, 2007), the court affirmed that "Federal Rule of Civil

Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. at *6; *quoting Bell Atlantic Corp. v. Twombly*, 75 U.S.L.W 4337, 127 S. Ct. 1955, 1965 (2007). Noting also that the model complaint set forth in Fed. R. Civ. P. Form 16 includes only five simple elements,[1] the court reasoned: "It logically follows that a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend. . . . Thus, a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent." *McZeal*, 2007 U.S. App. LEXIS 22025 at *7.[2]

Visa assumes that PrivaSys must specifically allege, element by element, that Visa or others operating under its direction and control (*e.g.*, banks; *see* below) practice every step. But this is not the standard, any more than is requiring PrivaSys to plead its proof.

Visa's alternative argument for a "stay" reflects its inability to contest under Fed. R. Civ. P. 20 the showing in PrivaSys' opening brief, that the claims against the banks raise common issues, involve the same transactions, and satisfy the Rule 20 standards for judicial economy and avoiding repetitive litigation. Visa is not clear about how long the "stay" would last, but it appears to want the claims against the banks stayed until after trial. In other words, Visa *demands* duplicative litigation. But Visa's "customer suit exception" does not apply when the "customers" are to be part of the same suit as the manufacturer; it is a *venue*

---

[1] "1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that defendant has been infringing the patent 'by making selling and using [the device] embodying the patent'; 4) a statement that that the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages." *McZeal*, 2007 U.S. App. LEXIS 22025 at *6.

[2] *See also Phonometerics, Inc. v. Hospitality Franchise Systems, Inc*, 203 F.3d 790, 794 (Fed. Cir. 2000) (complaint deemed sufficient because it "alleges ownership of the asserted patent, names each individual
… (Footnote continued on next page) …

doctrine, designed to give a manufacturer suit preference over another suit against "mere customers." And, in any event, Chase and Wells Fargo are not mere customers; they are active and intimate participants in the infringement, as is described within.

Finally, denying joinder or staying the claims against Chase and Wells Fargo would prejudice PrivaSys. Visa will defend the case in part by arguing that it does not really profit from the payWave platform, but rather insist that its member banks reap the real financial benefits. In this way, Visa will make the banks' profits and conduct central to its defense, all the while insisting that the banks not be parties. It hardly seems fair to permit Visa to defend the case by pointing to an empty chair, where Visa insisted that the chair stay empty. This, along with the certainty of *seriatim* trials stretching ever into the future, underscores the wisdom of bringing the two largest payWave banks into this case now.

## II.   **RELEVANT FACTS**

Because Visa attacks the factual merits of the complaint with its "futility" contention, PrivaSys reviews the facts alleged:

PrivaSys invented a method to reduce credit card fraud, one that has already been licensed by major credit/debit card companies, including scheme operator MasterCard International. AC ¶¶19-26. Prior payment card authentication systems relied on a static authorization code, which is read when the card is "swiped" at the point of sale, and ultimately authenticated (or rejected) by the bank that issued the card ("issuing bank"). A static authorization code can be stolen, allowing the thief to manufacture a counterfeit card. *Id*. ¶¶11-18. The PrivaSys system, however, uses a microprocessor chip and a secret key on the card to create an authentication code that changes dynamically with each transaction.

---

defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked").

The code is authenticated at the "back-end" by the issuing bank by using the same calculation to reproduce dynamic code. *Id*. ¶¶20-21. Because a counterfeit card cannot generate the matching code, the bank knows to reject the transaction. *Id*. The PrivaSys authentication system can be used with innovative magnetic stripe cards that PrivaSys is developing, or with radio frequency ("RF") cards such as payWave.

PrivaSys patented this technology, and owns the patent, U.S. No. 7,195,154 ("'154"). *Id*. ¶24. The patent "discloses a method that uses an encrypted and compressed authentication code that is dynamically calculated with each transaction and transmitted via the discretionary data field through the legacy payment card processing system and which was validated by duplicating the calculation in the issuing bank's data processing systems and comparing two values for a match." *Id*. ¶25.

PayWave cards are Visa credit or debit cards that work by RF, and incorporate the dynamically changing authentication (called "dCVV" by Visa) method described in the '154 patent. *Id*. ¶¶27-30. The payWave method practices the '154 patent by, *inter alia*, generating the dCVV and transferring it through the Visa system to the merchant and then the issuing bank for authorization. *Id*. Chase and Wells Fargo also infringe by using the payWave system. *Id*. ¶¶31-34, 35-38. Chase and Wells Fargo issue to cardholders payWave credit and debit cards, and process and authenticate payWave transactions. *Id*. ¶¶31-38.

Chase and Wells Fargo, and the cardholders and merchants they contract with, **must** perform the elements of the payWave system exactly according to Visa's specifications and regulations: "The members including Chase and Wells Fargo, agree to abide by the operating regulations and rules of Visa. Accordingly, the members are required by Visa to comply with Visa's rules and standards for its product platforms and payments network, including design, features and functionality of payment cards and programs." *Id*. ¶3.

Tellingly, Visa does not deny that Visa itself controls every step of the allegedly infringing payWave system. In fact, it is the very essence of the system that Visa, in concert with the member banks, under a web of contracts with the banks, merchants and cardholders, directs every aspect of the functioning of its payment systems: "The VISA product . . . is not the plastic card itself, but the rules and regulations among the various VISA members that thereby create a national payment system. This universal system is the true product of VISA." *National Bankcard Corp v. Visa U.S.A., Inc.*, 779 F.2d 592, 602 n.17 (11th Cir. 1986). "Visa . . . adopts rules and standards to manage the system that enables its members to carry out their individual functions." *Visa U.S.A. Inc. v. First Data Resources, Inc.*, No. C 02-01786 JSW, 2005 U.S. Dist. LEXIS 34281 at *4 (N.D. Cal. Aug. 15, 2005). The Visa web of contracts controls the merchants' participation as well. *National Bankcard Corp v. Visa U.S.A., Inc.*, 596 F.Supp. 1231, 1254 n.15 (S.D. Fla. 1984) ("merchants in the VISA system are required to honor proper customer requests to use the card, and, of course, to abide by other system regulations"); *aff'd*, *National Bankcard Corp.*, 779 F.2d 592.

The contractual relationship among the banks and Visa is so tight that the courts have described Visa and its member banks as a "joint venture" with "significant interdependency of the members and their indivisibility with Visa," such that "each member bank could not alone provide . . . universal payments service that ensures that a Visa card will be honored by any merchant regardless of which bank issued it so long as that merchant displays the Visa logo on its door." *National Bankcard*, 596 F. Supp. at 1254.

### III. VISA'S FUTILITY ARGUMENT IS WRONG FOUR WAYS.

Visa's futility argument rests on the proposition that neither Visa nor Visa member banks infringe, either directly or indirectly. *See* Visa Br. at 3, n.2.

#### A. The Complaint Alleges Otherwise.

First, the complaint alleges otherwise. As a pleading matter, is that not enough? If Visa wishes to defeat the claims of direct infringement and indirect infringement against Chase and Wells Fargo by showing that neither they nor Visa perform nor direct or control the performance of each element of any claim, that is a matter of proof, not pleading.

#### B. Visa Need Not Itself Practice Every Step Itself, As Long As It Controls Others Who Do.

Second, Visa recognizes the banks can be liable for indirect infringement, as alleged, *if Visa itself is liable for direct infringement* (also as alleged). Visa Br. at 2-3. For this reason, Visa argues—although somewhat sheepishly and only in a footnote—that it does not practice all of the steps *itself* and so supposedly cannot be directly liable. *Id.* at 3, n.2.

Visa misstates the law. Visa does not have to practice each step itself, so long as it directs or controls others who do. This point was explicit in *BMC v. Paymentech*, where the court explained that "a party cannot avoid infringement… simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the mastermind in such situations to escape liability." 498 F.3d at 1381. Thus, the court held the "proper standard for joint infringement by multiple parties of a single claim" requires, at a minimum, a showing that a direct infringer exercised "control or direction" over the other entities performing steps of the claim. *Id*. at 1378, 1381.

*BMC* is no outlier.  Courts have long recognized that there may be direct infringement by multiple parties who have an agency relationship or are working in concert, or where one party directs or controls the infringing steps of another.  *See*, *e.g.*, *Hill v. Amazon.com*, No. 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389 (E.D.Tex. Jan. 19, 2006) (joint liability may occur with an "agency" or "working in concert" relationship, or if a defendant "directs or controls" another party in performing steps).[3]  Thus, in *Applied Interact, LLC v. The Vermont Teddy Bear Co., Inc.*, No. 04 Civ. 8713, 2005 U.S. Dist. LEXIS 19070 (S.D.N.Y. Sept. 6, 2005) (cited with approval by the district court in *BMC*), Vermont Teddy Bear could be liable for direct infringement even though the customers themselves performed the step of printing an Internet coupon, because they were required to do so "according to the instructions on VTB's web site."  *Id*. at 16-17.  Similarly, in *Hill v. Amazon.com*, 2006 U.S. Dist. LEXIS 3389, the Internet retailers could directly infringe because they "designed their websites so as to control the product selection by the customer."  *Id*. at *18-19.

### C. As The Scheme Operator, Visa Absolutely Controls Every Step Of The payWave Process.

Given this law, Visa's futility argument necessarily reduces to the point that Visa does not control directly or through others every step of its payWave process.  This is not only a factual assertion, but one contrary to fact; **Visa, in concert with the member banks, zealously controls every aspect of how payWave cards are designed, made, and used**

---

[3]     *See also Shields v. Haliburton*, 493 F. Supp. 1376, 1389 (W.D. La. 1980) ("infringement of a patented process or method cannot be avoided by having another perform one step of the process or method"), *aff'd*, 667 F.2d 1232 (5th Cir. 1982); *Marley Mouldings Ltd. v. Mikron Indus., Inc*., No. 02 C 2855, 2003 U.S. Dist. LEXIS 7211 (N.D. Ill. Apr. 30, 2003) (defendant controlled a claim element when it purchased from a third party pellets that were made pursuant to its specifications); *Faroudja Labs., Inc. v. Dwin Elecs., Inc*., No. 97-20010-SW, 1999 U.S. Dist. LEXIS 22987 at *15, 17 (N.D. Cal. Feb. 24, 1999) (entities "working in concert" may directly infringe); *Cordis Corp. v. Medtronic Ave, Inc.*, 194 F.Supp. 2d, 323, 349-50 (D. Del. 2002) (medical supply company liable for direct infringement, where it had a close relationship with physicians performing remaining elements of patent), *rev'd on other grounds by* 339 F.3d 1352 (Fed. Cir. 2003).

**through a web of contractual requests and obligations**.  *See* Section II above.  As Visa said in its own August 29, 2007 S-4 Registration Statement for its corporate restructuring:

> Our members are obligated to honor rules and standards established by us, which apply to their use in our branded programs and their participation in our transaction processing system. . . .  We require our members to comply with these rules, which relate to such matters as the use of our brands and trademarks, the standards, design and features of payment cards and programs, merchant acquiring activities, including acceptance standards applicable to merchants . . ..[4]

Further, the Master Agreement between Visa and its members, which governs broadly all "debit and credit card related products and services which may include card issuance, card processing, merchant acquisition," states that Visa and the banks have a "special relationship" because the bank is a "member" of Visa and has agreed to "comply with . . . the By-Laws and Operating Regulations of Visa."  Id. at 301-302.[5]

Thus, every step of the accused payWave method is performed according to the specifications, rules, and regulations of Visa and its agreements with the member banks.  The Visa payment network could not work otherwise.

---

[4] Reply Declaration of George Bishop ("Bishop Decl."), Exh. A at 148.  Further, Visa "establishes rules and standards" for, *e.g*., its "product platforms and payment network including … authorization and clearing of transactions [and] product platform, features and functionality."  *Id*. at 134.

[5] Bishop Decl. Exh. B.  The agreement specifically provides that all aspects of its "Contactless Payment Program," *i.e*., payWave, are governed by Visa's specifications.  The banks agree to

> comply with all current Visa U.S.A. Inc. Operating Regulations [including] the Visa Contactless Payment Service Description, the Visa Brand and Card Guidelines and Specification, the Visa Contactless Payment Specification (based on ISO 14443 Type A and B), version 1.4.2, the Visa Contactless Payment Specification License Agreement as modified and set forth in Schedule Three, Contactless Technical Implementation Guide—Issuers, Acquirers, and Processors (TIG) (January 15, 2005), Member Implementation Guide and any other documentation, operating regulations, principles, guidelines specifications and associated licenses provided and/or adopted by Visa, including by Visa International Service Association . . . shall have the force of the Operating Regulations . . .

*Id*., "Visa Contactless Payment Program Participation Agreement."

REPLY IN SUPPORT OF MOTION FOR LEAVE      8     CASE NO. C 07-03257 SI
TO FILE AMENDED COMPLAINT

**D.     Visa Misreads The Claims Of The '154 Patent.**

In addition to indirect infringement, the complaint alleges that that Chase and Wells infringe directly.  Visa is wrong when it asserts that, as a matter of law, each claim of the patent must be interpreted such that certain steps are neither practiced nor directed by the banks, *i.e*., must be performed by the cardholder and merchant, without bank control.

Visa uses Claim 23 for its argument, incorrectly stating that it is representative of all the other independent claims.[6]  Claim No. 1 of the patent, for example, has the following four steps:

| 1 | "**generating** a  Secure Card Number ("SCN") for the first entity . . .." |
|---|---|
| 2 | "**transferring** the SCN and a first entity identifier to a second entity in a first transaction" |
| 3 | "**transferring** the SCN and the first entity identifier from the second entity to a money source," and |
| 4 | "**verifying** that the first transaction is valid with the money source by use of the first entity identifier and the SCN." |

(emphasis added)

The claim uses the passive voice, referring to the "generating," "transferring" and "verifying" of the SCN and first entity identifier.  It does not require any steps to be performed by the cardholder or merchant.[7]

 Nor does the claim establish that any of these steps are not practiced under direction or control, or in concert with, the banks (and Visa).  To the contrary, it is manifest, as discussed above, that all aspects of Visa card transactions are conducted pursuant to the Visa

---

[6]     U.S. Patent No. 7,195,154 (the "'154 Patent") has five independent claims (Claims 1, 23, 24, 26, and 27).  Claim 23 has additional language re "using an electronic card to generate" that is not in Claims 1 or 27.

[7]     The cardholder, for example, does not generate the SCN in the first step of the transaction.  It is the card, provided under contract by the issuing bank , who generates it exactly as the banks and Visa specify.  Thus, the specification for the '154 patent provides that "the first entity must be supplied with the means to generate a customer SCN."  '154 Patent, 6:10-17.

rules, regulations and specifications, which are binding on all parties by virtue of the web of contracts of the member banks with cardholders, merchants, and Visa.

## IV. VISA'S STAY MOTION SHOULD BE REJECTED.

Unable to contest PrivaSys' showing that its motion to add parties satisfies the standards of F.R.C.P. 20, under which "joinder of claims, parties, and remedies is strongly encouraged" (*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *see* PrivaSys Opening Brief at 2-4), Visa argues for a stay under the "customer suit exception," a doctrine of venue law that clearly does not apply here, but would have the same effect as denying joinder under Rule 20, *i.e*., removing Chase and Wells Fargo from this litigation.

The customer suit exception is an exception to the first-to-file venue rule, which, "in some circumstances, permits a court to stay or enjoin infringement suits brought against the customers of a manufacturer, pending resolution of concurrent litigation between the patentee and the manufacturer itself." *In re Laughlin Products, Inc., Patent Lit*., 265 F. Supp. 2d 525, 537 (E.D. Pa. 2003). It is based on the presumption that the manufacturer is the "real party in interest," which should be present in the forum to defend its allegedly infringing activities. *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989). But where the alleged customers and manufacturer "are defending claims of infringement in the same consolidated suit in the same jurisdiction," the customer suit exception is "inapposite." *Alloc, Inc. v. Unilin Décor N.V.*, No. 02-C-1266, 2005 U.S. Dist. LEXIS 38066 at *10-11 (E.D. Wisc. Dec. 15, 2005). Stays have routinely been rejected in such situations.[8]

---

[8] *E.g., Rates Technology, Inc. v. New York Telephone Co.*, 94 Civ. 9297 (DC), 1995 U.S. Dist. LEXIS 10254 (S.D.N.Y. July 23, 1995); *Lifelink Pharmaceuticals, Inc. v. NDA Consulting, Inc*., No. 5:07-CV-785, 2007 U.S. Dist. LEXIS 62674 (N.D. Ohio Aug. 24, 2007); *Naxon Telesign Corp. v. GTE Information Systems, Inc.*, 89 F.R.D. 333 (N.D. Ill. 1980); *Beck Systems, Inc. v. Marimba, Inc., et al*., No. 01 C 5207, 2001 U.S. Dist. LEXIS 19023 (N.D. Ill. Nov. 19, 2001). *Refac Int'l v. IBM*, 790 F.2d 79 (Fed. Cir. 1986), is the exception that proves this rule. Although the court separated for trial 31 "customer" defendants from 6 "manufacturer"

… (Footnote continued on next page) …

Even where there are multiple suits involved, a stay will be denied where the defendants to be stayed are more than "mere resellers" or the patentee has a "separate interest" in suing the purported customer. *A.P.T., Inc. v. Quad Environmental Tech. Corp., Inc.*, 698 F.Supp. 718, 721 (N.D. Ill. 1988) (stay denied where "customer" was alleged direct infringer); *Lifelink Pharm., Inc. v. NDA Consulting, Inc.*, 2007 U.S. Dist. LEXIS 62674 at *7-9 ("customers" were allegedly "an integral part" of distribution network, and the "potential scope of damages" against each defendant was unclear); *Williams Gold Refining Co. Inc. v. Semi-Alloys* Inc., No. Civ. 75-300, 1978 U.S. Dist LEXIS 19777 (W.D.N.Y. Feb. 2, 1978) (not a "mere customer" when "involved in one step of a manufacturing process"); *In re Laughlin Products, Inc., Patent Lit.*, 265 F. Supp. 2d 525, 537 (E.D. Pa. 2003) ("where the patentee alleges that the customers themselves have directly infringed . . . the customer suit exception does not apply"); *Rates Technology, Inc.,* 1995 U.S. Dist. LEXIS 10254 at *6; *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081-82 (Fed. Cir. 1989).

Here, Chase and Wells Fargo are direct infringers, as alleged in the complaint, actively and intimately involved in the infringement. Indeed, they are not customers at all, as they conduct infringing activities by, *e.g.*, manufacturing and issuing payWave cards, and processing and authenticating payWave transactions. More, Chase and Wells Fargo and the other Visa member banks *are* Visa, and infringe working in concert with Visa and under its rules and specifications for every aspect of payWave.

PrivaSys has a legitimate, separate interest in suing the banks also because PrivaSys has a separate and significant damage claim against them. Whereas Visa receives a small

---

defendants in the same suit, it did so where (1) unlike the instant case, the customer defendants agreed to be bound by the judgment against the other defendants and (2) the large number of customer defendants would have created a management nightmare at trial. These have been found to be "controlling distinctions" by courts
… (Footnote continued on next page) …

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT        11        CASE NO. C 07-03257 SI

percentage fee on payWave transactions, Chase and Wells Fargo benefit because they promote the payWave feature to increase the volume of their credit and debit card business, from which they profit in multiple ways. For this reason, PrivaSys will be seriously prejudiced if are not allowed to seek damages against Chase, Wells Fargo and Visa in the same trial. *See Naxon Telesign Corp. v. GTE Info. Systems, Inc.*, 89 F.R.D. 333, 339 (N.D. Ill. 1980) ("weighing in favor of the proposed amendment [to add a party] is the fact that it would facilitate consideration of [plaintiff's] recovery . . . in a single proceeding").

Further, at trial, Visa, will point to the "empty seat." In addition to pointing to the banks as the real beneficiaries of payWave, Visa will argue about what the banks do and do not do in regard to practicing payWave (much as Visa does in its opposition), either to point the finger away from itself or to argue that Visa does not control the banks. Thus, Visa will make the conduct of the banks central to the trial. It is critical for these reasons for PrivaSys to have Chase and Wells Fargo as parties for trial with Visa.

What Visa calls "harassment" of Chase and Wells Fargo is, in reality, PrivaSys' legitimate efforts to protect its intellectual property. Chase, Wells Fargo, and the other member banks who issue payWave cards, not just Visa, are infringing, so PrivaSys is, very reasonably, attempting to negotiate licenses with them, and has filed suit against two. PrivaSys initially thought it necessary to sue only Visa, on the assumption that Visa would negotiate a license that covered it and its member banks alike. In the absence of a license, PrivaSys has every legitimate reason to contact the banks, who are major players in the infringement and, as Visa implicitly acknowledges, receive a major portion of the benefit from payWave. Chase and Wells Fargo have not agreed to be bound by the judgment of this

---

denying a stay of claims in the same suit. *E.g.*, *Kahn*, 889 F.2d at 1082; *Rates Technology*, 1995 U.S. Dist. LEXIS 10254.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT     12     CASE NO. C 07-03257 SI

case. "This fact strongly weighs against a stay . . . because it increases the chance for duplicative litigation." *Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, No. 96 C 0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996).

Finally, the balance of judicial economy and convenience strongly favors adding Chase and Wells Fargo here. Adding Chase and Wells Fargo (and not staying the action) will allow the closely-related claims against these very-closely-related parties to be litigated in the same action. Where the patentee's suit names "both the purported customers and the products source," a stay "would run counter to the goal of fostering judicial economy without enhancing the . . . defendant's ability to litigate the issue of patent infringement." *Lifelink Pharm., Inc. v. NDA Consulting, Inc.*, 2007 U.S. Dist. LEXIS 62674 at *10-11. Because PrivaSys has alleged infringement against the banks that "is interrelated with any potential infringement by" Visa, "discovery will necessarily involve all the parties. These defendants will therefore be intimately involved in the litigation regardless of a stay or injunction." *Mitsubishi Elec.*, 1996 U.S. Dist. LEXIS 12239 at *10.

## V. <u>CONCLUSION</u>

For the reasons set forth above, and in PrivaSys' opening brief, PrivaSys respectfully requests that its motion for leave to amend to add Chase and Wells Fargo as defendants be granted.

Dated: November 2, 2007                    Respectfully submitted,

                                                                      */s/ Spencer Hosie*
                                                                      SPENCER HOSIE (CA Bar No. 101777)
                                                                      shosie@hosielaw.com
                                                                      BRUCE WECKER (CA Bar No. 078530)
                                                                      bwecker@hosielaw.com
                                                                      GEORGE F. BISHOP (CA Bar No. 89205)
                                                                      gbishop@hosielaw.com
                                                                      HOSIE McARTHUR LLP

|   |   |
|---|---|
| 1 | One Market, 22nd Floor |
|   | San Francisco, CA 94105 |
| 2 | (415) 247-6000 Tel. |
|   | (415) 247-6001 Fax |
| 3 |   |
|   | ROBERT J. YORIO (CA Bar No. 93178) |
| 4 | yorio@carrferrell.com |
|   | CARR & FERRELL LLP |
| 5 | 2200 Geng Road |
|   | Palo Alto, CA  94303 |
| 6 | (650) 812-3400 Tel. |
| 7 | (650) 812-3444 Fax |
| 8 | Attorneys for Plaintiff |
|   | PRIVASYS, INC. |
| 9 |   |