# EXHIBIT F

LEXSEE


Caution
As of: Oct 28, 2007

FAROUDJA LABORATORIES, INC., Plaintiff, v. DWIN ELECTRONICS, INC., Defendant. DWIN ELECTRONICS, INC., Counterclaimant, v. FAROUDJA LABORATORIES, INC., Counterdefendant.

CIVIL NO. 97-20010 SW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1999 U.S. Dist. LEXIS 22987

February 24, 1999, Decided
February 24, 1999, Filed; March 3, 1999, Entered in Civil Docket

**DISPOSITION:** [*1] Dwin's motion for summary judgment of noninfringement as to the '596 patent GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an action brought by plaintiff patent holder against defendant electronics corporation that alleged direct patent infringement, contributory infringement, and inducement of infringement, the corporation filed a motion for summary judgment.

**OVERVIEW:** The patent holder's patent was for a method and an apparatus that converted motion picture film images to television signals, and also improved the resulting image quality. The holder alleged that the corporation used, sold, and offered for sale various products that allegedly infringed on the holder's patent. The parties agreed that none of the corporations performed any film-to-television conversion, and none of the corporation's products contained any structure designed for or capable of performing film-to-television conversion. Upon consideration, the court had to grant the motion for summary judgment. The court found that there was no direct infringement, and in the absence of direct infringement, there could have been no inducement infringement or contributory infringement. The holder failed to establish direct infringement by a third party and failed to demonstrate that the corporation actively and knowingly induced the infringement. Summary judgment was appropriate in a tax case when there was no genuine issue as to any material fact and the movant was entitled to judgment as a matter of law.

**OUTCOME:** The court granted the motion for summary judgment.

**CORE TERMS:** infringement, signal, television, film, patent, frame, doubler, film-to-television, infringe, patented process, contributory, user, converted, entities, inducement, converting, conversion, infringer, summary judgment, improving, nonmoving party, transferring, apparatus, genuine, moving party, performing, converter, picture, convert, license

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1]Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion. The moving party must demonstrate that no

genuine issue of material fact exists for trial. However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. The nonmoving party must make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN2]The adjudication of a summary judgment motion is not a "trial on affidavits." Credibility determinations and weighing of the evidence are solely jury functions. Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. However, there may be no genuine issue of material fact if the evidence is of insufficient caliber or quantity to allow a rational finder of fact to find for the nonmoving party. In some circumstances the factual context may render the nonmoving party's claim implausible, and the nonmoving party must come forward with more persuasive evidence to support the claim than would otherwise be necessary.

*Patent Law > Infringement Actions > General Overview*
[HN3]Determining patent infringement requires a two-step analysis: First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.

*Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement*
[HN4]To establish direct infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent. When an element is entirely missing, that is, when the accused device does not contain either the exact element of the claim or its equivalent, there is no infringement. Literal infringement requires that every limitation in the patent claims be found in the accused product. This same rule also applies equally to method claims: infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim. Under the doctrine of equivalents, an accused product that differs from the claim, and thus does not literally infringe, nonetheless infringes if its difference from that claim is insubstantial from the perspective of one of ordinary skill in the relevant art. A court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement. To prevail under the doctrine of equivalents, a patent owner must show that each limitation of a claim is met by its substantial equivalent in the accused product.

*Patent Law > Infringement Actions > General Overview*
[HN5]A claim as properly interpreted must be compared to the accused device or process. The comparison should not be between the accused device and the patent owner's commercial embodiment.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Elements > General Overview*
[HN6]The doctrine of equivalents requires that each limitation of a claim be met by its substantial equivalent in the accused device.

*Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement*
[HN7]Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C.S. § 271(b). Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C.S. § 271(c). However, there can be no inducement of infringement or contributory infringement in the absence of direct infringement. If there is no direct infringement of a patent there can be no contributory infringement. Direct infringement is a prerequisite to inducing infringement. Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement.

*Patent Law > Infringement Actions > Burdens of Proof*
*Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement*

[HN8]In addition to establishing direct infringement by a third party, a plaintiff asserting inducement of infringement must also demonstrate that the defendant "actively and knowingly" induced the infringement, and a plaintiff asserting contributory infringement must demonstrate that the defendant knew it was contributing to the direct infringement, 35 U.S.C.S. § 271(c).

***Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement***
[HN9]A party cannot avoid liability for infringement by having someone else perform one or more steps of a patented process for them.

**COUNSEL:** For GENERAL INSTRUMENT CORPORATION, Plaintiff: Scott D. Baker, Adaline J. Hilgard, Crosby Heafey Roach & May, San Francisco, CA.

For FAROUDJA LABORATORIES, INC., Plaintiff: Joseph F. Jennings, Stephen C. Jensen, Knobbe Martens Olson & Bear LLP, Newport Beach, CA.

For DWIN ELECTRONICS INC, defendant: James J. Elacqua, Daniel R. Hansen, Brobeck Phleger & Harrison, Palo Alto, CA.

For DWIN ELECTRONICS INC, defendant: Edward R. Schwartz, Wesley W. Monroe, Christie Parker & Hale LLP, Irvine, CA.

For DWIN ELECTRONICS INC, defendant: Todd B. Serota, Brian W. Kasell, Troop Steuber Pasich Reddick & Tobey LLP, Todd B. Serota, Troop Meisinger Steuber & Pasich, LLP, Los Angeles, CA.

For DWIN ELECTRONICS INC, Counter-claimant: James J. Elacqua, Daniel R. Hansen, Brobeck Phleger & Harrison, Palo Alto, CA.

For DWIN ELECTRONICS INC, Counter-claimant: Todd B. Serota, Troop Meisinger Steuber & Pasich, LLP, Los Angeles, CA.

**JUDGES:** SPENCER WILLIAMS, United States District Judge.

**OPINION BY:** SPENCER WILLIAMS

**OPINION**

ORDER GRANTING DWIN ELECTRONICS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

Plaintiff [*2] Faroudja Laboratories, Inc. ("Faroudja") initiated this action against Defendant Dwin Electronics, Inc. ("Dwin") alleging direct infringement, contributory infringement, and inducement of infringement of U.S. Patent No. 5,876,596 ("the 596 patent"). The 596 patent claims a method and apparatus for improving image quality in television systems by converting motion picture film images to television signals and multiplying the resulting television signal scan lines. Presently before the Court is Dwin's motion for summary judgment of noninfringement as to the 596 patent. For the reasons set forth below, the Court hereby GRANTS Dwin's motion.

**I. BACKGROUND**

**A. Relevant Technology**

Television images are made up of a rapid succession of frames, with each frame consisting of an electronically-created image. In the United States, the standard frame rate is 30 frames per second. These 30 frames are each made up of an "odd" and "even" field, with each field consisting of 262.5 scan lines. Scan lines are horizontal lines scanned across the television display surface by an electron gun inside the television, in accordance with the television image to be displayed. The resulting frames [*3] are displayed on the picture screen at the rate of 30 per second, thereby creating the illusion of a continuously moving image.

In contrast with television, motion picture film images are made up of a succession of still frames recorded at the rate of 24 frames per second. Rapid display of these frames in sequence creates the illusion of a continuously moving image.

In order for material that was originally recorded on motion picture film to be displayed on television, the 24 frame-per-second film images must be converted to the standard 30 frame-per-second television images. Devices called "scanners" and "encoders", or "telecines", are available to perform the conversion. Once converted, the resulting television signals may be transmitted as television broadcasts, delivered via cable by cable companies, or recorded magnetically or optically on video tapes or laser discs for distribution and later viewing.

In the United States, the "3:2 pull-down method" is commonly used to perform film-to-television signal conversions. This method produces three television fields from the first film frame, followed by two television fields from the second film frame. This 3:2 pattern is repeated [*4] for successive pairs of film frames. The result is an interlaced, 30 frame-per-second television signal. The quality of the images produced by signals converted using the 3:2 pull-down method is not always

high, however, and viewers may seek a means of improving the image quality.

### B. The '596 Patent

Faroudja's 596 patent is entitled "Film-to-Video Converter With Scan Line Doubling." This patent is directed to a method and apparatus for converting film frames to television signals and improving the resulting image quality. Faroudja's 596 patent includes two independent claims: 1 and 14. Claim 1 states a method for converting film frames to television signals and improving the resulting image quality. Claim 14 describes an apparatus for converting film frames to television signals and improving the resulting image quality.

The first of the four steps in claim 1 is "transferring each film frame to a television signal." This transfer can be accomplished using the 3:2 pull-down method. The present motion does not concern the remaining three steps of claim 1 (which consist of delaying parts of the signal to create multiple components, compressing the components of the signal, [*5] and finally, selecting from among the components to create an improved signal).

Claim 14 describes an apparatus which includes four structural elements for converting film frames to television signals and improving the resulting image quality. The first of the four structural elements, written in "means-plus-function" form, is a "film-to-video transfer means for transferring each film frame to a television signal." This element corresponds to the first step of claim 1. The subsequent structural elements of claim 14 correspond to the subsequent steps of claim 1 described above, namely, a delay means (corresponding to the delaying step of claim 1), a time compressor means (corresponding to the compressing step of claim 1), and a multiplexer means (corresponding to the selecting step of claim 1).

### C. The Accused Devices

In this action, Faroudja alleges that Dwin infringes the 596 patent through manufacture, use, offer for sale, and sale of various products. Specifically, the accused devices include Dwin's line doubler products referred to as LD-1, LD-2 (versions one and two), LD-5, LD-10 and TranScanner (collectively "Dwin's line doublers"). The parties agree that none of [*6] Dwin's line doublers perform any film-to-television conversion, and that none of Dwin's line doublers contain any structure designed for or capable of performing film-to-television conversion.

Typically, Dwin's line doublers are used with sophisticated home theater systems. The products cannot be used alone; they must be used in conjunction with at least a television. In use, a Dwin line doubler is connected to a television system so that the line doubler receives a standard television signal and outputs an improved signal to the television. The standard television signal the line doubler receives may include signals previously converted from film.

In the present motion, Dwin argues that its products do not incorporate a means for converting film frames to a television signal and so cannot infringe the 596 patent. Furthermore, according to Dwin, users of Dwin's line doublers would use the product for any television signal, regardless of whether any portion of that signal had been converted from film, and users have no control over how or when any such film-to-television conversion takes place. Likewise, no user of Dwin products has any control over the film-to-television conversion [*7] process, nor does anyone who converts film-to-television have control over whether any Dwin line doubler is ultimately used to improve the converted television signal.

### II. LEGAL STANDARD

[HN1]"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994)(citations omitted). A party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The moving party must demonstrate that no genuine issue of material fact exists for trial. See id. at 322. However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. See id.

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine [*8] issue for trial." Id. at 324. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

[HN2]The adjudication of a summary judgment motion is not a "trial on affidavits." Anderson v. Liberty Lobby, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Credibility determinations and weighing of the evidence are solely jury functions. See Id. at 255. Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348

(1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)).

However, there may be no genuine issue of material fact if "the evidence is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party. *Anderson*, 477 U.S. at 254. In some circumstances the factual context may render [*9] the nonmoving party's claim implausible, and the nonmoving party must come forward with "more persuasive evidence" to support the claim "than would otherwise be necessary." *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

In this action, Faroudja alleges that Dwin's line doubler products directly infringe the 596 patent, and that Dwin induces others to infringe and contributes to others' infringement. [HN3]Determining patent infringement requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Nike Inc.*, 43 F.3d at 646 (quoting *Carroll Touch, Inc. v. Electro Mechanical Systems*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)).

### A. Direct Infringement

[HN4]To establish direct infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)("when an element is entirely missing, that is, when the accused device does not contain either [*10] the exact element of the claim or its equivalent, there is no infringement"); *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1559 (Fed. Cir. 1995) ("literal infringement requires that every limitation in [the patent] claims be found in the accused product").

This same rule also applies equally to method claims: infringement of a method claim occurs only when the accused infringer carries out every step as set forth in the claim. *General Foods Corp. v. Studiengesellschaft Kohle mb H*, 972 F.2d 1272, 1274-75 (Fed. Cir. 1992)("one cannot properly speak of any single step as being 'claimed', for it is not; all that is claimed is the process consisting of the *combination* of all three steps")(emphasis in original).

Under the doctrine of equivalents, an accused product that differs from the claim, and thus does not literally infringe, nonetheless infringes if its difference from that claim is insubstantial from the perspective of one of ordinary skill in the relevant art. However, "the doctrine of equivalents is not a license to ignore or erase structural and functional limitations of the claim, limitations on which the public is entitled [*11] to rely in avoiding infringement." *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996)(internal quotations and citations omitted); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987)("a court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement"). To prevail under the doctrine of equivalents, a patent owner must show that each limitation of a claim is met by its substantial equivalent in the accused product. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997).

[HN5]A claim as properly interpreted must be compared to the accused device or process. *See e.g., Symbol Technologies, Inc. v. Opticon, Ind.*, 935 F.2d 1569, 1574 (Fed. Cir. 1991). The comparison should not be between the accused device and the patent owner's commercial embodiment.

Claim 1 of the 596 patent includes a step of "transferring each film frame to a television signal. [*12] " To practice the invention, one must perform this integral first step. Claim 14 requires a "film-to-video transfer means for transferring each film frame to a television signal." This apparatus claim requires a structure that converts film signals to television signals to practice the invention. The patent specification discloses several such structures.

Dwin itself performs no film-to-television transfers. Dwin's line doublers do not perform the transfer of film to television signals, and they contain no structure capable of performing the transfer. Therefore, Dwin does not directly infringe any claim of the 596 patent. Furthermore, [HN6]the doctrine of equivalents requires that each limitation of a claim be met by its substantial equivalent in the accused device. As Dwin's products contain no substantial equivalent to the film-to-television transfer step or means, Dwin does not directly infringe the 596 patent under the doctrine of equivalents.

### B. Inducement of Infringement and Contributory Infringement

In addition to alleging that Dwin directly infringes the 596 patent, Faroudja alleges that Dwin induces others to infringe and contributes to others' infringement. [HN7]"Whoever [*13] actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Also, "whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or

composition, or part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

However, there can be no inducement of infringement or contributory infringement in the absence of direct infringement. See *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341-42, 5 L. Ed. 2d 592, 81 S. Ct. 599 (1961)("if there is no *direct* infringement of a patent there can be no *contributory* infringement")(emphasis in original); *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1485 (Fed. Cir. 1998)("direct infringement is a prerequisite to inducing infringement"); *Carborundum Co. v. Molten Metal Equipment Innovations, Inc.*, 72 F.3d 872, 876 n.4 (Fed. Cir. 1995) [*14] ("absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement"). [1] Accordingly, the Court may only find inducement of infringement or contributory infringement by Dwin upon determination that some third-party directly infringes the 596 patent.

> 1  [HN8]In addition to establishing direct infringement by a third party, a plaintiff asserting inducement of infringement must also demonstrate that the defendant "actively and knowingly" induced the infringement, *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988), and a plaintiff asserting contributory infringement must demonstrate that the defendant knew it was contributing to the direct infringement, 35 U.S.C. § 271(c). As the Court finds no direct infringement of the 596 patent by a third party, it does not address these issues.

In support of its argument that Dwin induces others to infringe and contributes to infringement, Faroudja [*15] asserts that third-party users of Dwin's line doublers directly infringe the 596 patent. The parties agree that users of Dwin's products do not perform any film-to-television transfer. However, Faroudja contends that third parties who perform only certain steps of a patent, where the performance of those steps follows the completion of the earlier steps of the patent, can be found to be direct infringers.

It is true that several district courts have found a party liable for direct infringement of a process patent even where the various steps included in the patent are performed by distinct entities. However, these cases indicate that some connection between the different entities justified that finding.

For example, in *E.I. DuPont De Nemours & Co. v. Monsanto Co.*, a third party purchased a product on which Mansanto had performed the first step of a three-step patented process for producing stain resistant carpet fibers, and then performed the last two steps of the process itself. 903 F. Supp. 680, 735 (D. Del. 1995), aff'd without op., 92 F.3d 1208 (Fed. Cir. 1996). The Court stated that [HN9]"a party cannot avoid liability for infringement by having [*16] someone else perform one or more steps of a patented process for them." Id. The third party could not "avoid liability for infringement of DuPont's process patent by paying Monsanto to practice step (a) of the patented process for it." Id.

The connection between the direct infringer and the inducer or contributor is present in other cases. In *Shields v. Haliburton Co.*, two defendants worked together to perform the patented process, and the court held that "infringement of a patented process or method cannot be avoided by having another perform one step of the process or method." 493 F. Supp. 1376, 1389 (W.D. La. 1980), aff'd, 667 F.2d 1232 (5th Cir. 1982). In *Free Standing Stuffer, Inc. v. Holly Development Co.*, a defendant instructed its advertising agency to perform or have performed certain steps of a patented process which it then completed. 187 U.S.P.Q. (BNA) 323, 333 (N.D. Ill. 1974). The court found infringement and stated that "infringement is not avoided by contracting with others to carry out the method of a patent." *187 U.S.P.Q. (BNA) at 335*. Similarly, in *Metal Film Co. v. Metlon Corp.*, a defendant was found to [*17] infringe when it arranged for outside suppliers to perform the first step of patented process. 316 F. Supp. 96, 110 (S.D.N.Y. 1970). "That defendants choose to have the [first step of the process] done by outside suppliers does not mitigate their infringement of the overall process." Id. at n. 12 (citing *Crowell v. Baker Oil Tools, Inc.*, 143 F.2d 1003, 1004 (9th Cir. 1944)("it is obvious that one may infringe a patent if he employs an agent for that purpose or have the offending articles manufactured for him by an independent contractor").

*Monsanto*, *Shields*, *Free Standing Stuffer* and *Metal Film* each demonstrate that the entities found to directly infringe patented processes worked in concert with other entities to complete the process of infringement. In the present action, no such connection exists between users of Dwin line doublers and film-to-television transfer companies. Faroudja argues that the requisite connection arises by virtue of the copyright license that exists when a person buys or rents a film that has been converted to a television signal. The Court finds that this connection is not of the type that supports a finding of [*18] direct infringement by a user of Dwin line doublers. A copyright license concerns such rights as distribution of copies, reproduction, preparation of derivative works, and

Page 6

1999 U.S. Dist. LEXIS 22987, *

public performance or display of a work. Any copyright license a viewer has with the film owner exists independently of the film-to-television transfer.

Faroudja also cites to two cases in support of its argument that to find direct infringement of a patented process no connection must exist between the entities that perform its various steps. See *Avery Dennison Corp. v. UCB Films PLC*, 1997 U.S. Dist. LEXIS 13594, No. 95 C 6351, 1997 WL 567799 (N.D. Ill. Sept. 4, 1997) and *Idacon, Inc. v. Central Forest Products, Inc.*, 1986 U.S. Dist. LEXIS 26297, 3 U.S.P.Q.2D (BNA) 1079 (E.D. Okla. 1986). In the first of these cases, *Avery Dennison*, the plaintiff alleged that the defendant performed the first step of a patented process, then sold the product to laminator companies, who performed additional steps of the process on the product and in turn sold it to converter companies. 1997 U.S. Dist. LEXIS 13594, 1997 WL 567799, at *3. The court referred to the converter companies, which performed the final steps of the process, as "potential [*19] direct infringers." *Id.* To determine whether they were actual direct infringers, the court sought evidence that the defendant had "direct contact" with the converter companies. *Id.* In the absence of such evidence, however, the court held that promotion of the defendant's product for use in the patented process was sufficient to preclude summary judgment. *Id.* Thus, rather than supporting Faroudja's argument that no connection need exist between the entities that perform various steps of a patented process, the court in *Avery Dennison* actually intimated that such a connection must exist when it sought direct contact between the entities.

In *Idacon*, the second case cited by Faroudja, the court found that the defendant had infringed a patented three-step process when it purchased a product and performed the final two steps of the process. 3 U.S.P.Q.2D (BNA) at 1092. The first step had been performed previously by a third party. *Id.* However, nothing indicates that the court considered the extent of the connection between the entities which performed the steps of the process. The conclusion of law in this regard simply reads: "Infringement of a patented method [*20] cannot be avoided by having another perform one step of the method." *Id.* (citing *Shields*, 493 F. Supp. 1376). The dearth of reasoning for this conclusion makes it unpersuasive in the context of the present action. Furthermore, the *Idacon* court's citation to *Shields* suggests that the several cases which underscored the connection between the entities performing various steps of a process patent are more compelling than the *Idacon* case itself.

Faroudja next argues that even if the Court determines that there is no direct infringement of the 596 patent by users of Dwin line doublers, it should find infringement under the doctrine of equivalents. Faroudja asserts, for instance, that the renting of a video tape may be considered the equivalent of converting film frames to a television signal. Faroudja fails, however, to explain how a rental can be compared and deemed equivalent to the act of performing film-to-television conversion. Any comparison between converting a signal and obtaining a pre-converted signal is simply inapposite. Obtaining a pre-converted signal is only possible if another party has already performed the transfer. Faroudja's argument [*21] would have the Court completely read out of the patent the requirement that the signal be converted. This, the Court cannot do.

The following hypothetical serves to demonstrate the extreme degree of remoteness between the transfer companies and users of Dwin line doublers: if in 1979 a movie production company decided to distribute one of its films in video format, it would convert the film itself or contract for its film to be converted. Twenty years later, if a person wished to view that movie using a Dwin line doubler to improve the image quality, he or she could rent the movie from any of a number of video rental stores. Faroudja would have the Court hold that when the person viewed the movie, the combination of the 1978 film-to-television transfer and the 1999 use of the line doubler result in infringement of the 596 patent. Infringement would occur, according to Faroudja, even though the transfer step took place more than a decade before the 596 patent even issued. Finding infringement under such circumstances would improperly expand the scope of Faroudja's patent. There can be no finding of direct infringement resulting from the combination of such remote film-to-television [*22] signal transfers and Dwin's products.

Film-to-television transfer companies existed long before Faroudja applied for its patent. In drafting its patent application, Faroudja was free to include only those steps or means that actually improved the quality of images resulting from previously transferred signals. It did not do so, however, and for the Court to now find infringement by a process or device that does not include a transfer step or means would impermissibly extend coverage of the patent and improperly broaden its claims.

Consistent with the Court's finding of no direct infringement by a third party, there can be neither contributory infringement nor inducement of infringement. *Aro Manufacturing*, 365 U.S. at 341-42; *Fina Research*, 141 F.3d at 1485; *Carborundum*, 72 F.3d at 876 n.4.

IV. CONCLUSION

Dwin's products neither perform the film-to-television transfer step of the 596 patent claim 1 nor incorporate means for transferring film signals to television signals as required by claim 14. The connection between transfer companies who convert films and users of Dwin

line doublers who improve the resulting images is [*23] too remote to constitute direct infringement. In the absence of direct infringement, there can be no inducement infringement or contributory infringement. Therefore, Dwin's motion for summary judgment as to the 596 patent (docket no. 19) is GRANTED.

IT IS SO ORDERED.

DATED: *2/24/99*

SPENCER WILLIAMS

United States District Judge