# EXHIBIT L

5 of 9 DOCUMENTS


Cited
As of: Oct 12, 2007

RATES TECHNOLOGY INC., Plaintiff, -against- NEW YORK TELEPHONE COMPANY d/b/a NYNEX, TELESECTOR RESOURCES GROUP, INC., MITSUI & CO. (U.S.A.), INC. and TAMURA ELECTRIC WORKS, LTD., Defendants.

94 Civ. 9297 (DC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1995 U.S. Dist. LEXIS 10254*

July 23, 1995, Decided
July 25, 1995, FILED

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] For the purposes of deciding a motion to dismiss, the material facts alleged in an amended complaint must be accepted as true.

*Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Continuation Applications > General Overview*
[HN2] As a matter of sound judicial administration, courts have fashioned a "**customer** suit **exception**" to the general rule that where there are two competing lawsuits, the first-filed suit should have priority. Under this exception first-filed **patent infringement** actions against customers are stayed pending the adjudication of later claims against manufacturers. The rationale underlying the **customer** suit **exception** is that the manufacturer and the patent holder are the true parties in interest, and an action between them is to be favored over an action commenced in another district against a reselling customer of the manufacturer.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN3] Pursuant to *28 U.S.C. § 1367(a)*, a court has supplemental jurisdiction over state law claims that are part of the "same case or controversy" already before the court as to which the court has "original jurisdiction." State and federal claims are part of the same case or controversy if they derive from a common nucleus of operative fact.

*Contracts Law > Formation > General Overview*
[HN4] Under the doctrine of contractual definiteness, an agreement to agree may be unenforceable when material terms are left for future negotiations. As the New York State Court of Appeals has noted: The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to.

*Contracts Law > Formation > General Overview*
*Contracts Law > Remedies > General Overview*
[HN5] The New York courts do not apply the doctrine of contractual definiteness rigidly because strict application

could actually defeat the underlying expectations of the contracting parties. Under New York law, a court should endeavor to enforce agreements where it can ascertain what the parties intended, determine whether there has been a breach and fashion a proper remedy. A finding that a contract is indefinite and unenforceable is at best a last resort.

*Contracts Law > Breach > General Overview*
*Contracts Law > Remedies > Compensatory Damages > General Overview*
[HN6] Generally, a plaintiff is entitled to recover the damages that would place it in the same position it would have been in if an agreement had not been violated. Damages are measured by what the parties reasonably contemplated at the time of contract and by what is demonstrably related to the breach.

*Contracts Law > Formation > Execution*
*Contracts Law > Statutes of Frauds > Requirements > Signatures*
[HN7] Under the New York statute of frauds, certain agreements must be in writing and subscribed to by the party to be charged. *N.Y. Gen. Oblig. Law § 5-701* (1989). Courts have also held that the writing must contain all the essential terms of the agreement.

**COUNSEL:** [*1] FERBER GREILSHEIMER CHAN & ESSNER, By: Robert N. Chan, Esq., 530 Fifth Avenue, New York, New York 10036 - and - JAMES & FRANKLIN, 60 East 42nd Street, New York, New York 10165, Attorneys for Plaintiff.

RICHARD H. WAGNER, ESQ., 1113 Westchester Avenue, White Plains, New York 10604 - and - JOEL BOSSOM, ESQ., 1095 Avenue of the Americas, New York, New York 10019, Attorneys for Defendants NYNEX and TRG.

**JUDGES:** DENNY CHIN, United States District Judge

**OPINION BY:** DENNY CHIN

**OPINION**

*MEMORANDUM DECISION*

**CHIN, D.J.**

Defendants New York Telephone Company d/b/a NYNEX ("NYNEX") and Telesector Resources Group, Inc. ("TRG") move for an order: (i) staying plaintiff's **patent infringement** claim against NYNEX and (ii) dismissing or staying plaintiff's three state law breach of contract claims. For the reasons that follow, the motion is denied.

*Background*

This dispute concerns debit card pay telephones and a patent licensing agreement among plaintiff Rates Technology Inc. ("RTI"), NYNEX and its subsidiary TRG. RTI is the beneficial and record owner of a patent, U.S. Patent 4,122,308 (the "Patent"), which covers certain telephone device technology.[1] (Amended Complaint ("AC") [*2] at P 8). In late 1991 or January 1992, NYNEX undertook a market test of debit card pay telephones manufactured by Landis & Gyr, Inc. ("Landis"). (AC at PP 10-11). RTI claimed that the Landis telephones **infringed** the **Patent**, and the dispute was resolved by RTI, NYNEX and TRG entering into a patent license agreement dated January 13, 1992 (the "Letter Agreement"), pursuant to which RTI granted NYNEX and TRG a license to use the Landis telephones. (AC at P 12). Under the terms of the Letter Agreement, NYNEX and TRG agreed to pay RTI a license fee for each debit card telephone utilized in the market test. (AC at P 14). NYNEX and TRG also agreed to obtain licenses, and to ensure that their suppliers had licenses, for any future intended use of technology covered by the Patent. (AC at P 15).

> 1 [HN1] For the purposes of deciding this motion to dismiss, the material facts alleged in the amended complaint must be accepted as true. See *Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993), cert. denied, 130 L. Ed. 2d 489, 115 S. Ct. 572 (1994).*

[*3] In late 1994 and early 1995, NYNEX installed debit card pay telephones throughout its service area. These telephones were manufactured by defendant Tamura Electric Works, Ltd. ("Tamura") and distributed by defendant Mitsui & Co. (U.S.A.), Inc. ("Mitsui") (AC at PP 21-22). Plaintiff alleges that these telephones **infringe** the **Patent** and that defendants do not have a license for this use. (AC at PP 21-24).

In this action plaintiff alleges four claims:

> (i) Breach of the Letter Agreement by NYNEX and TRG through their failure to pay plaintiff the license fee for each of the debit card pay telephones used in their market test (the first cause of action);
> 
> (ii) Infringement of the Patent by NYNEX, Mitsui and Tamura (the second cause of action);
> 
> (iii) Breach of the Letter Agreement by NYNEX knowingly **infringing** the

**Patent** by deploying the Tamura and Mitsui debit card pay telephones (the third cause of action); and

(iv) Breach of the Letter Agreement by NYNEX acquiring telephones from suppliers which did not have a valid license for the Patent, thereby denying plaintiff its expected fee (the fourth cause of action).

By order dated March 23, 1995, I stayed discovery [*4] against NYNEX and TRG pending disposition of this motion to dismiss.

*Discussion*

*1. Stay of the Patent Claim against NYNEX*

NYNEX and TRG argue that plaintiff's infringement claims against them should be stayed for several reasons: First, NYNEX and TRG are mere customers of the true transgressors, *i.e.*, the manufacturer of the allegedly infringing products, and suits directly against manufacturers are preferred over suits against presumably less culpable customers. Second, Mitsui and Tamura are the real parties in interest and resolution of the claims against them would be dispositive of the patent claims against NYNEX and TRG. Third, fairness and efficiency require that NYNEX and TRG be spared the expense of litigating this matter at this time.

a. *The Customer Suit Exception*

[HN2] As a matter of sound judicial administration, courts have fashioned a "**customer** suit" **exception** to the general rule that where there are two competing lawsuits, the first-filed suit should have priority. Under this exception first-filed **patent infringement** actions against customers are stayed pending the adjudication of later claims against manufacturers. *See Katz* [*5] *v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming stay of suit against customers pending resolution of separate suit against manufacturer); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178-79 (2d Cir. 1969) (affirming stay of action against Woolworth Company in favor of separate action against manufacturer); *see also Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir.), *cert. denied*, 434 U.S. 860, 54 L. Ed. 2d 133, 98 S. Ct. 185 (1977) (affirming stay granted to determine priorities between competing lawsuits raising the same issue in different forums). The **customer** suit **exception** has been applied to different claims within a single lawsuit in the unusual situation where there were 37 defendants, and the 31 customer defendants agreed to be bound by any decision against the manufacturers. *Refac Int'l Ltd. v. IBM*, 790 F.2d 79 (Fed. Cir. 1986), *modified on other grounds*, 798 F.2d 459 (Fed. Cir. 1986) (affirming stay as method of separating claims against 31 customers from claims against 6 manufacturers). The rationale underlying the **customer** suit **exception** is that the manufacturer and the patent holder are [*6] the true parties in interest, and an action between them is to be favored over an action commenced in another district against a reselling customer of the manufacturer. *William Gluckin & Co.*, 407 F.2d at 178-79.

The **customer** suit **exception** is inapplicable to the instant action. First, there is no question of competing lawsuits and no issue of priority between actions. The parties have not cited to any related proceedings, and all the alleged infringers are parties to this action. Nor do the considerations that warranted a stay of the claims against customers in the *Refac* case exist in the present case. In *Refac*, there were 37 defendants, and thus it made sense to simplify the case. Here, there are only three defendants. More importantly, the customers in *Refac* agreed to be bound by the result; NYNEX and TRG have offered no such agreement here.

Second, NYNEX is not a mere customer of Tamura and Mitsui within the meaning of the "**customer** suit" **exception**. *Cf. William Gluckin & Co.*, 407 F.2d at 178. Rather plaintiff alleges that NYNEX studied the Patent during the test market and then induced Tamura and Mitsui to produce infringing telephones. (AC at P 26). Hence, [*7] according to the allegations of the amended complaint, NYNEX is not a mere "innocent" customer.

Third, efficient case management does not require a stay under these circumstances. On the contrary, as the patent claims against defendants Tamura and Mitsui and, as set forth below, the contract claims against NYNEX will be proceeding, efficiency and common sense dictate that the stay be denied.

Therefore, the policy reasons underlying the "**customer** suit" **exception** simply do not apply, and no compelling reason exists to stay the patent claims against NYNEX and TRG. This prong of defendants' motion is denied.

*2. Dismissal of State Law Claims*

NYNEX next moves to dismiss plaintiff's three state law claims, *i.e.*, the first, third and fourth causes of action of the amended complaint, arguing that the Court lacks subject matter jurisdiction over the first claim and that the third and four causes of action fail to state claims upon which relief can be granted.

#### a. *The First Cause of Action*

The first claim of the amended complaint is that NYNEX and TRG breached the Letter Agreement by failing to pay plaintiff the specified fee for Landis debit card pay telephones [*8] employed in the market test. NYNEX and TRG assert that the connection between this breach of contract claim and the **patent infringement** claim is too tenuous to provide a basis for supplemental jurisdiction.

[HN3] Pursuant to *28 U.S.C. § 1367(a)*, this Court has supplemental jurisdiction over state law claims that are part of the "same case or controversy" already before the Court as to which the Court has "original jurisdiction." State and federal claims are part of the same case or controversy if they "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*.

The Court has "original jurisdiction" over plaintiff's second cause of action, which asserts a federal claim: **patent infringement**. Plaintiff's first cause of action alleges that defendants breached a license agreement involving the very same patent at issue in the second cause of action. Hence, the infringement claim and the claim that the infringement breached the Letter Agreement are part of the "same case or controversy" and derive from a "common nucleus of operative fact."

Judicial economy also supports the exercise of jurisdiction [*9] under these circumstances. The Court will be adjudicating plaintiff's other claims for breach of the Letter Agreement, and while the first claim raises additional issues, it would be unjust and inefficient to require the parties to litigate the first cause of action in a separate state court action. Accordingly, I will exercise jurisdiction over plaintiff's first breach of contract claim. *See Promisel v. First Am. Artificial Flowers, 943 F.2d 251, 254 (2d Cir. 1991), cert. denied, 502 U.S. 1060, 112 S. Ct. 939, 117 L. Ed. 2d 110 (1992)* (noting that the exercise of supplemental jurisdiction over state law claims is not automatic, but "is a favored and normal course of action."). Defendants' motion to dismiss the first cause of action is denied.

#### b. *The Third Cause of Action*

NYNEX argues that plaintiff's third claim for relief, which alleges that NYNEX breached the Letter Agreement by knowingly **infringing** the **Patent** by deploying the Tamura and Mitsui debit card pay telephones, should be dismissed or stayed. NYNEX seeks dismissal on the grounds that the provision in question is an unenforceable agreement to agree, and that the promise is void under the [*10] New York statute of frauds. [2]

[HN4] Under the doctrine of contractual definiteness, an agreement to agree may be unenforceable when material terms are left for future negotiations. *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981)*. As the New York State Court of Appeals has noted: "The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to." *166 Mamaroneck Ave. Corp. v. 151 East Post Rd. Corp., 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 687, 575 N.E.2d 104 (1991)*.

   2   The Letter Agreement provides in relevant part:

   "NYNEX undertakes, now and in any future deployment of debit card pay telephone technology, that it will not knowingly infringe any RTI Patent of which it has notice without first obtaining for itself, or ascertaining that its supplier has obtained, a valid patent license covering NYNEX's intended use of such patented technology." (AC at P 15).

[*11] [HN5] The New York courts, however, do not apply this doctrine rigidly because "strict application . . . could actually defeat the underlying expectations of the contracting parties." *Id.*, *78 N.Y.2d at 91, 571 N.Y.S.2d at 688* (citation omitted). Under New York law, a court should endeavor to enforce agreements where it can ascertain what the parties intended, determine whether there has been a breach and fashion a proper remedy. *Id.* A finding that a contract is indefinite and unenforceable "is at best a last resort." *Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co., 232 N.Y. 112, 114, 133 N.E. 370 (1921)* (Cardozo, J.).

Therefore, the first inquiry is whether a court could ascertain what the parties intended. According to the amended complaint, NYNEX promised to perpetually forebear from certain infringing conduct, and agreed to leave the terms of any future patent license open to negotiation. (AC at P 31). The Letter Agreement states that: "NYNEX undertakes . . . that it will not knowingly infringe any RTI Patent." (AC at P 31). Hence, the Letter Agreement is sufficiently definite for this Court to determine what the parties promised.

Case 3:07-cv-03257-SI   Document 43-13   Filed 11/02/2007   Page 6 of 7

Page 17
1995 U.S. Dist. LEXIS 10254, *

The next question is whether a court [*12] could determine whether the Letter Agreement has been breached. I believe I can. According to the amended complaint, NYNEX knowingly infringed the Patent in its deployment of the Tamura and Mitsui telephones. (AC at P 32). If plaintiff can prove this allegation, then it may be able to prove a breach of the Letter Agreement.

The last issue is whether a court could fashion a remedy for such an alleged breach. [HN6] Generally, a plaintiff is entitled to recover the damages that would place it in the same position it would have been in if the agreement had not been violated. *R & I Elecs., Inc. v. Neuman*, 66 A.D.2d 836, 411 N.Y.S.2d 401, 403 (2d Dep't 1978). Damages are measured by what the parties reasonably contemplated at the time of contract and by what is demonstrably related to the breach. *Borden v. Chesterfield Farms, Inc.*, 27 A.D.2d 165, 277 N.Y.S.2d 494, 496 (1st Dep't 1967).

Applying these general principles to the specific circumstances of this case, a court could rely on the Letter Agreement as an objective measure of the parties' expectations. The price and duration of the license for the market test could provide a rough basis for structuring a remedy. While there are [*13] inherent difficulties in transferring terms from one type of contract to another, the challenge is not so great as to justify dismissing this claim at this early juncture of the litigation.

NYNEX's second argument is that the alleged promise to forebear from future infringement is void under the statute of frauds. [HN7] Under the New York statute of frauds, certain agreements must be in writing and subscribed to by the party to be charged. N.Y. Gen. Oblig. Law § 5-701 (McKinney 1989 & Supp. 1995). Courts have also held that the writing must contain all the essential terms of the agreement. *See, e.g., Paper Corp. of the United States v. Schoeller Technical Papers, Inc.*, 742 F. Supp. 808, 810 (S.D.N.Y. 1990).

Here, of course, there is a writing: the Letter Agreement is a writing signed by the parties. However, NYNEX argues that the alleged promise does not contain all the required terms. This argument assumes that plaintiff is seeking performance of an indefinite future license. Plaintiff responds that it is not seeking to enforce a future license, but rather alleges breach of the promise to forebear from infringing.

At this early phase of the case, I cannot conclude as a matter [*14] of law that the Letter Agreement is void because it fails to contain all the essential terms of an agreement not to infringe plaintiff's patents. Therefore, NYNEX's motion to dismiss the third claim is denied.

NYNEX moves, in the alternative, for a stay of this claim, based on "the same considerations that make it appropriate to stay Plaintiff's patent infringement claim as to NYNEX." (NYNEX Mem. at 21). I have denied the request to stay the patent infringement claim, and no compelling reason exists to stay the third cause of action. The alternative request for a stay is also denied.

### c. *The Fourth Cause of Action*

Finally, NYNEX moves to dismiss or stay plaintiff's fourth claim, which alleges that NYNEX breached the Letter Agreement by acquiring telephones from suppliers that did not have a valid license for the Patent, thereby denying plaintiff its expected fee. NYNEX argues that this claim should be dismissed on two grounds: First, the promise is too indefinite to be enforceable. Second, the Letter Agreement is an unambiguous, integrated contract and the parol evidence rule bars this claim as a matter of law.

For the same reasons set forth above, I find that the [*15] promise to forebear from certain conduct, *i.e.*, buying from suppliers without licenses, is sufficiently definite to survive this motion to dismiss. *See Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 762-63 (S.D.N.Y. 1990) (holding that a New York contract that left certain terms open to future negotiation was sufficiently definite).

NYNEX alternatively argues that this claim is an impermissible attempt to enforce negotiating positions that were never meant to be binding. NYNEX asserts that these prior and contemporaneous discussions are inadmissible under the parole evidence rule.

Construing the amended complaint in the light most favorable to plaintiff, as I must at this point, the fourth claim is not barred by the parol evidence rule. Plaintiff is simply alleging a different theory of breach, *i.e.*, failure to pay plaintiff its expected fee, and an alternative method for calculating damages. Therefore, NYNEX's motion to dismiss the fourth claim is denied.

### *Conclusion*

The motion of defendants NYNEX and TRG to stay or dismiss plaintiff's claims is denied in all respects. Discovery may proceed on all claims against all parties. A status conference will be [*16] held on October 13, 1995 at 10 a.m. in Courtroom 11A of the 500 Pearl Street Courthouse.

SO ORDERED.

Dated: New York, New York

July 23, 1995

DENNY CHIN

United States District Judge