# EXHIBIT M

4 of 9 DOCUMENTS


Caution
As of: Oct 28, 2007

VISA U.S.A. INC., a Delaware corporation, Plaintiff and Counterdefendant, v. FIRST DATA CORPORATION, a Delaware corporation; FIRST DATA RESOURCES, INC., a Delaware corporation; and FIRST DATA MERCHANT SERVICES CORPORATION, a Florida corporation, Defendants and Counterclaimants.

No. C 02-01786 JSW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2005 U.S. Dist. LEXIS 34281; 2005-2 Trade Cas. (CCH) P74,968

August 16, 2005, Decided
August 16, 2005, Filed

**SUBSEQUENT HISTORY:** Partial summary judgment granted by *Visa U.S.A., Inc. v. First Data Corp.*, 2005 U.S. Dist. LEXIS 37276 (N.D. Cal., Aug. 16, 2005)

**PRIOR HISTORY:** *Visa U.S.A., Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121, 2005 U.S. Dist. LEXIS 7230 (N.D. Cal., 2005)

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN1] A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2] A party moving for summary judgment who does not have the ultimate burden of persuasion at trial must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. A party who moves for summary judgment who does bear the burden of proof at trial must produce evidence that will entitle him or her to a directed verdict if the evidence goes uncontroverted at trial.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN3] Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. In order to make this showing, the non-moving party must identify with reasonable particularity the evidence that precludes summary judgment. It is not the district court's task to scour the record in search of a genuine issue of triable fact. If the non-moving party fails to make said showing, the moving party is entitled to judgment as a matter of law.

Case 3:07-cv-03257-SI   Document 43-14   Filed 11/02/2007   Page 3 of 7

Page 2

2005 U.S. Dist. LEXIS 34281, *; 2005-2 Trade Cas. (CCH) P74,968

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Evidence > Testimony > Credibility*
[HN4] An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. A fact is "material" if it may affect the outcome of the case. In considering a motion for summary judgment, the district court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party.

*Antitrust & Trade Law > General Overview*
*Constitutional Law > General Overview*
*Constitutional Law > State Constitutional Operation*
[HN5] Antitrust laws are concerned with proscribing conduct that restrains competition. Actions of a single entity are not proscribed under *15 U.S.C.S. § 1*, which governs the concerted action of multiple parties to the detriment of competition. *Section 1* also does not apply in instances in which a multiple-party entity functions as a single structure where certain conditions are met.

*Antitrust & Trade Law > General Overview*
*Business & Corporate Law > Corporations*
*Business & Corporate Law > Mergers & Acquisitions > Mergers*
[HN6] The concerted actions of a parent and its wholly owned subsidiary are not subject to scrutiny under *15 U.S.C.S. § 1* because the corporation and its subsidiary have a complete unity of interest, their objectives are common, and their general corporate actions are guided by one corporate consciousness. When a parent and its wholly owned subsidiary pursue a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for *Section 1* scrutiny.

*Business & Corporate Law > Corporations*
*Business & Corporate Law > Mergers & Acquisitions > Mergers*
[HN7] The single entity inquiry is fact-specific and is dependent on the circumstances of each case. The district court considers a number of factors in order to determine whether a particular corporate structure functions as a single entity. First, the most common factor for finding that a joint venture functions as a single enterprise is the presence of a common, single and unified economic interest. In the absence of economic unity, the fact that joint ventures pursue the common interests of the whole is generally not enough, by itself, to render them a single entity. Second, in the absence of economic unity, the fact that firms are not actual competitors is also usually not enough, by itself, to render them a single entity. Absence of actual competition may simply be a manifestation of the anticompetitive nature of the agreement itself, as where firms conspire to divide the market. Lastly, the analogy to a single entity is weakened, and the resemblance to a collaborative venture is strengthened, where the individual members of the venture effectively control the decisions of the venture.

**COUNSEL:** [*1] For Visa U.S.A. Inc., Plaintiff: Heather Noel Leal, Stephen V. Bomse, Heller Ehrman White & McAuliffe LLP, San Francisco, CA; M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe LLP, San Francisco, CA; Richard J. Mooney, Holme Roberts & Owen LLP, San Francisco, CA; Robert L. Stolebarger, Robert J. Vizas, Holmes Roberts & Owen LLP, San Francisco, CA; George M. Haley, Holme Roberts & Owen LLP, Salt Lake City, UT; Nancy J. Gegenheimer, Holme Roberts & Owen LLP, Denver, CO; Susan E. Whitecotton, Holme Roberts & Owen LLP San Francisco, San Francisco, CA.

For First Data Corporation A Delaware corporation, First Data Resources Inc a Delaware corporation, First Data Merchant Services Corporation a Florida Corporation, Defendants: Beth H. Parker, Jason A. Yurasek, Sujal Shah, David P. Chiappetta, Bingham McCutchen LLP, San Francisco, CA; Cynthia Browning, Frank Hinman, Geraldine Mary Daly Alexis, Giselle Fahimian, Susan J. Welch, Bingham McCutchen LLP, San Francisco, CA; Erick Charles Howard, Frank A. Cialone, Shartsis Friese LLP, San Francisco, CA; Greg S. Farano, Shartsis Friese LLP, San Francisco, CA.

For JPMorgan Chase Bank, National Association, Movant: James Oliva, Morrison [*2] & Foerster LLP, Los Angeles, CA.

For First Data Corporation A Delaware corporation, First Data Merchant Services Corporation, First Data Resources Inc a Delaware corporation, Counter-claimants: Cynthia Browning, Geraldine Mary Daly Alexis, Susan J. Welch, Bingham McCutchen LLP, San Francisco, CA; Erick Charles Howard, Shartsis Friese LLP, San Francisco, CA; Greg S. Farano, Shartsis Friese LLP, San Francisco, CA; Jason A. Yurasek, Sujal Shah, Beth H. Parker, Bingham McCutchen LLP, San Francisco, CA.

For Visa U.S.A. Inc., Counter-defendant: Heather Noel Leal, Heller Ehrman White & McAuliffe LLP, San Francisco, CA; Richard J. Mooney, Holme Roberts & Owen LLP, San Francisco, CA; Robert L. Stolebarger, Robert J. Vizas, Holmes Roberts & Owen LLP, San Francisco,

Case 3:07-cv-03257-SI   Document 43-14   Filed 11/02/2007   Page 4 of 7

Page 3
2005 U.S. Dist. LEXIS 34281, *; 2005-2 Trade Cas. (CCH) P74,968

CA; Susan E. Whitecotton, Holme Roberts & Owen LLP San Francisco, San Francisco, CA.

For Visa U.S.A. Inc., Counter-defendant: Robert L. Stolebarger, Holmes Roberts & Owen LLP, San Francisco, CA; Susan E. Whitecotton, Holme Roberts & Owen LLP San Francisco, San Francisco, CA; Richard J. Mooney, Holme Roberts & Owen LLP, San Francisco, CA.

For Unified Merchant Services, Counter-claimant: Beth H. Parker, Sujal Shah, [*3] Bingham McCutchen LLP, San Francisco, CA.

For First Data Corporation A Delaware corporation, First Data Merchant Services Corporation a Florida Corporation, First Data Resources Inc a Delaware corporation, Counter-claimants: Beth H. Parker, Bingham McCutchen LLP, San Francisco, CA.

For Visa U.S.A. Inc., Counter-defendant: Robert L. Stolebarger, Holmes Roberts & Owen LLP, San Francisco, CA.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER DENYING VISA, U.S.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ESTABLISHING THAT VISA IS A SINGLE ENTITY AS TO AUTHORIZATION, CLEARING AND SETTLEMENT OF VISA TRANSACTIONS**

Now before the Court is Visa, U.S.A., Inc. ("Visa, U.S.A.")'s motion for partial summary judgment in which Visa seeks to establish that it should be treated as a single entity as to authorization, clearing and settlement of Visa transactions. Having carefully read the parties' papers and considered the arguments and the relevant legal authority, the Court hereby DENIES Visa's motion. The Court finds that Visa has not met its burden of demonstrating that it functions as a single entity for purposes of the antitrust allegations pending [*4] against it.

**BACKGROUND**

The Visa system is made up of thousands of banks that issue cards bearing the VISA name and banks that sign or acquire merchants to accept those cards as payment. Visa's member banks compete with one another to issue Visa cards and/or to acquire merchants. (Declaration of William Sheedy ("Sheedy Decl."), PP 2, 4.) Visa manages and oversees the VISA marks and adopts rules and standards to manage the system that enables its members to carry out their individual functions. (Id., P 5.)

Typically, a Visa transaction involves two financial institutions: an issuer that receives funds from the cardholder-customer and an acquirer that compensates the merchant. (Id., P 7.) For an acquiring bank to guarantee compensation to its merchants for its cardholders' transactions, it needs assurance that it will be reimbursed by the issuing banks of such cardholders. The issuing banks must therefore commit to reimburse the acquirer regardless of whether they are compensated by the cardholders. (Id. at P 8.)

The undisputed evidence demonstrates that the member banks compete with one another, both by issuing credit and debit cards to their customers, and by signing [*5] up merchants to accept those Visa-branded cards. (Declaration of Todd Pickles ("Pickles Decl."), Ex. 4 (Lubowsaki Depo., 94:6-25), Ex. 5 (Biller Depo., 46:10-47:17).) The member banks are independent in their decisions regarding their individual businesses, subject to Visa's membership rules.

Authorization, clearing and settlement (or "ACS") is a system used to process credit card transactions. First, in order to avail itself of the issuer's payment guarantee, a merchant must seek authorization to ensure that the issuer has approved the cardholder to make the transaction. In the typical credit card transaction, the merchant sends an authorization request to the acquirer, which the acquirer then submits to a processing service. Visa currently requires that the transaction run through its centralized processing infrastructure, VisaNet, and then forwards the authorization request to the issuer. The issuer then must route the response back, again through VisaNet, to the acquirer who then informs the merchant whether the transaction has been authorized. This process is called "authorization." (Sheedy Decl., P 9.)

Second, the acquirer transmits the transaction information to Visa after [*6] the transaction has been completed. VisaNet records the transaction data and forwards the information to the issuer to enable the issuer to compensate the acquirer and bill the cardholder. This process is called "clearing." (Id., P 10.)

Lastly, the issuer must transfer the funds to the acquirer for the amount of the purchases that the issuer's cardholders have made at the acquirer's merchants, less the interchange fee paid to the issuer. This process, also now performed through VisaNet, is called "settlement." (Id., P 11.)

First Data is a merchant acquirer, a merchant processor and an issuer processor. (Pickles Decl., Ex. 9

Case 3:07-cv-03257-SI    Document 43-14    Filed 11/02/2007    Page 5 of 7

Page 4
2005 U.S. Dist. LEXIS 34281, *; 2005-2 Trade Cas. (CCH) P74,968

(Depo. Ex. 341), Ex. 10 (Pascarella Depo. 38:9-13).) First Data has provided networking services over the part thirty years, whereby the data from the merchant is routed to the merchant acquirer's processor, which in turn routes the data to the customer's issuing bank or its processor, to determine whether the transaction is authorized. The process is then completed in reverse. (Pickles Decl., Ex. 11 (Depo. Ex. 151), Ex. 5 (Biller Depo. 45:12-17).) In addition, First Data's process does not involve the Visa system at all when First Data has processed transactions [*7] for both the issuing bank and merchant acquirer, as there is no need to route the transaction through VisaNet. (Pickles Decl., Ex. 15 (Depo. Ex. 373 at VUFD0025440-441).)

First Data contends that, in response to expanded competition and cost savings options offered by First Data to the member banks, on August 28, 2002, the Visa board unanimously voted to prohibit members from bypassing VisaNet and using outside, or private, network processing arrangements. (Pickles Decl., Ex. 38 (Depo. Ex. 216 at 0317451-52); Sheedy Decl., P 14.) Visa's rules currently require virtually all Visa transactions to be authorized, cleared and settled through Visa's own processor, VisaNet. In response to Visa's suit against First Data for declaratory relief, trademark infringement and breach of contract, First Data counterclaimed for, among other things, violation of *Sections 1* and *2* of the Sherman Act.

## ANALYSIS

### A. Legal Standard on Summary Judgment.

[HN1] A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* Summary judgment is proper when the "pleadings, depositions, [*8] answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).*

[HN2] A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).* A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden, 213 F.3d 474, 480 (9th Cir. 2000).*

[HN3] Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a [*9] genuine issue for trial." *Fed. R. Civ. P. 56(e).* In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).* It is not the Court's task to "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995).* If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex, 477 U.S. at 323.*

[HN4] An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* A fact is "material" if it may affect the outcome of the case. *Id. at 248.* "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).* [*10]

### B. Visa's Contention That It Should Be Treated as a Single Entity.

Visa contends that its particular structure has generated by its formation activities that, but for the creation of the structure would not have otherwise existed, and therefore those activities, in this case ACS, must be regarded as the act of a single entity. Visa reasons that because ACS would not otherwise exist absent the network created by the Visa system, it cannot be the premise for competition outside of the Visa network. Visa further alleges that, by reason of what Visa characterizes as a syllogism, it is immune from liability under *Section 1* of the Sherman Act because, at least as to ACS, it constitutes a "single entity" and is thus incapable of conspiring with itself in violation of antitrust proscriptions. Although it is true that a single entity cannot conspire with itself, Visa has not demonstrated by its circular reasoning that it possesses the characteristics of a single entity. [1]

> 1 Visa does not proffer much evidence considered in support of its motion, with the exception of the declaration of William Sheedy. First Data objects to portions of the Sheedy declaration setting out the major premise of Visa's argument, namely that the function of the ACS system requires interconnectivity among members of the

Case 3:07-cv-03257-SI   Document 43-14   Filed 11/02/2007   Page 6 of 7

Page 5
2005 U.S. Dist. LEXIS 34281, *; 2005-2 Trade Cas. (CCH) P74,968

Visa payment network. Whether this evidence is inadmissible lay opinion testimony is irrelevant to the decision of this Court. Therefore, the Court need not rule on the admissibility of such evidence at this time. Also, to the extent that Visa contends the processing service is a "core" function, that contention is disputed as First Data has proffered evidence demonstrating that it has offered an alternative service to Visa cardholders for thirty years without affecting to its detriment the proper functioning of the Visa system.

[*11] C. Characteristics of a Single Entity.

[HN5] Antitrust laws are concerned with proscribing conduct that restrains competition. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977). Actions of a single entity are not proscribed under Section 1, which governs the concerted action of multiple parties to the detriment of competition. 15 U.S.C. § 1. Section 1 also does not apply in instances in which a multiple-party entity functions as a single structure where certain conditions are met.

For instance, [HN6] the concerted actions of a parent and its wholly owned subsidiary are not subject to Section 1 scrutiny because the corporation and its subsidiary have a complete unity of interest, their objectives are common, and their general corporate actions are guided by one corporate consciousness. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984). When a parent and its wholly owned subsidiary pursue a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for Section 1 scrutiny. Id.

[HN7] The single entity [*12] inquiry is fact-specific and is dependent on the circumstances of each case. See, e.g., Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1148 (9th Cir. 2003). The Court considers a number of factors in order to determine whether a particular corporate structure functions as a single entity. First, the most common factor for finding that a joint venture functions as a single enterprise is the presence of a common, single and unified economic interest. In "the absence of economic unity, the fact that joint ventures pursue the common interests of the whole is generally not enough, by itself, to render them a single entity." Id. Second, "in the absence of economic unity, the fact that firms are not actual competitors is also usually not enough, by itself, to render them a single entity." Id. at 1148-49. Absence of actual competition may simply be a manifestation of the anticompetitive nature of the agreement itself, as where firms conspire to divide the market. Id. at 1149. Lastly, "the analogy to a single entity is weakened, and the resemblance to a collaborative venture is strengthened," where the individual members of the [*13] venture effectively control the decisions of the venture. Fraser v. Major League Soccer, L.L.C., 284 F.3d 47, 57 (1st Cir. 2002).

C. Visa Has Not Carried Its Burden of Demonstrating that it is a Single Entity.

Visa has failed to demonstrate that the structure of the Visa system, even in the limited context of the promulgation and administration of the ACS system, has the characteristics of a single entity joint venture. The material facts about the structure of the member banks and the level of competition with one another over pricing decisions, including the cost of the processing service, are still in dispute.

First, Visa lacks single economic unity. The members do not have common ownership. The members are not fiduciaries of one another and they do not share profits and losses. Visa has not demonstrated that the member banks share a common economic interest. Rather, the evidence before the Court indicates, to the contrary, that the members banks stand in direct competition with one another, in various aspects, including, importantly, the pricing of the services for the processing of the banks' credit and debit cards. (See, e.g., Pickles Decl., [*14] Ex. 5 (Biller Depo. 62:6-23), Ex. 18 (Dorsey Depo. 43:14-48:19; 52:30-53:5), Ex. 2 (Heasley Depo. 60:5-62:25), Ex. 21, at VUFD0301153 (Visa U.S.A. Board of Directors meeting executive summary.)

Second, the evidence indicates that the members of the joint venture are in direct competition with one another, as well as in competition with other banks and financial institutions, outside of the Visa system in various aspects, including specifically on the terms and conditions of their purchases of network processing.[2] The decision to ban the use of outside processors from the Visa system affects the ability of the member banks to compete with one another and to compete with other banks regarding the cost of processing credit cards, including, but not limited to, Visa-branded credit cards.

   2   The fact that Visa's members stand in direct competition with one another and with members of, for instance, MasterCard, including for the cost of their respective processing services, is undisputed, insofar as Visa makes the same contention in other litigation and courts have so found based on the undisputed record. (See, e.g., United States v. Visa U.S.A., Inc. (DOJI), 163 F. Supp. 2d 322, 332-33 (finding that the members of Visa compete with each other on virtually every aspect of their business, including pricing, fees and finance charges, product features and other services for cardholders and merchants; National

Case 3:07-cv-03257-SI   Document 43-14   Filed 11/02/2007   Page 7 of 7

Page 6

2005 U.S. Dist. LEXIS 34281, *; 2005-2 Trade Cas. (CCH) P74,968

*Bancard Corp. (Nabanco) v. Visa U.S.A., Inc., 596 F. Supp. 1231, 1253 (S.D. Fla. 1984)* ("[T]o the extent possible, each member engages as an independent unit in economic competition with other VISA members with respect to various aspects of their common venture"); *see also* Pickles Decl., Ex. 3, at 5 (Visa's Opening Brief in appeal of DOJ matter).

[*15] Lastly, First Data proffered sufficient evidence to put the decision-making structure and function of the Visa system into dispute. The decision to ban the use of First Data as a processing service was made by a majority of the board of directors of Visa. There is evidence before the Court that the board is comprised at least in part by Visa's largest bank members, who, as independent financial decision-makers, voted to pass the ban on use of private processing services outside of VisaNet. (Pickles Decl., Ex. 38 (Depo. Ex. 216 at 0317451-52).) Therefore, this factor weighs against a finding that Visa functions as a single entity by virtue of its resemblance to a collaborative venture. *See Fraser, 284 F.3d at 57.*

## CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Visa.'s motion for partial summary judgment. The Court finds that Visa has not met its burden of demonstrating that it functions as a single entity for purposes of the antitrust allegations pending against it.

**IT IS SO ORDERED.**

Dated: August 16, 2005

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE